AUSA: WILLIAM K. STONE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

NGINA COPELAND,

Defendant.

# 26 MAG 2392

## SEALED COMPLAINT

Violations of 18 U.S.C. §§ 1343, 1349, and 2

COUNTY OF OFFENSE:
BRONX

SOUTHERN DISTRICT OF NEW YORK, ss.:

LAWRENCE BOND, being duly sworn, deposes and says that he is an Investigator with the New York City Department of Investigation ("DOI"), and charges as follows:

## COUNT ONE
### (Conspiracy to Commit Wire Fraud)

1.      From at least in or about June 2020 through at least in or about August 2021, in the Southern District of New York and elsewhere, NGINA COPELAND, the defendant, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

2.      It was a part and an object of the conspiracy that NGINA COPELAND, the defendant, and others known and unknown, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, which affected a financial institution, in violation of Title 18, United States Code, Section 1343, to wit, COPELAND and another individual ("CC-1") agreed to make and caused to be made false statements to the United States Small Business Administration ("SBA") and a certain financial services company ("Financial Institution-1"), by submitting a false and fraudulent loan application, through the SBA's Paycheck Protection Program ("PPP") to gain Government-guaranteed loan proceeds, and sent and received, and caused others to send and receive, emails and other electronic communications, to and from the Southern District of New York and elsewhere, in furtherance of that scheme.

(Title 18, United States Code, Section 1349.)

**COUNT TWO**
**(Wire Fraud)**

3.      From at least in or about June 2020 through at least in or about August 2021, in the Southern District of New York and elsewhere, NGINA COPELAND, the defendant, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, which affected a financial institution, to wit, COPELAND engaged in a scheme to obtain Government-guaranteed loan proceeds from the SBA and Financial Institution-1 through the PPP, by submitting a false and fraudulent loan application, and sent and received, and caused others to send and receive, emails and other electronic communications, to and from the Southern District of New York and elsewhere, in furtherance of that scheme.

(Title 18, United States Code, Sections 1343 and 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

4.      I am an Investigator with the DOI, and I have been personally involved in the investigation of this matter.  I base this Complaint on that experience; on my conversations with other law enforcement officials; and on my examination of various reports, records, and audio recordings.  Because this Complaint is submitted for the limited purpose of demonstrating probable cause, it does not include all the facts I have learned during the course of my investigations.  Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

**Overview**

5.      At all times relevant to this Complaint, since in or about April 2018 through the present, NGINA COPELAND, the defendant, has been employed by the New York City Department of Probation ("NYC DOP").

6.      From at least in or about June 2020 through at least in or about August 2021, NGINA COPELAND, the defendant, and another individual ("CC-1") engaged in a scheme to defraud the SBA and Financial Institution-1, and enrich themselves, by applying for a PPP loan on behalf of Andaiye's Hair Closet ("AHC"), a C-Corporation owned by COPELAND.  CC-1 prepared the PPP loan application, which contained materially false representations about AHC.  Based on that fraudulent application, Financial Institution-1 issued an SBA-guaranteed loan to COPELAND in the total amount of approximately $592,500.  The loan was forgiven on or about August 23, 2021, based on fraudulent representations made by COPELAND regarding AHC's payroll and business expenses, which COPELAND supported by attaching fraudulent bank records.

2

**The SBA's PPP**

7.     Based on my training and experience, my review of publicly available information, and my review of information received from the SBA, I know the following, in substance and in part:

a.     The SBA is a federal agency that administers assistance to American small businesses.  This assistance includes issuing certain loans, and guaranteeing loans issued by certain lenders, to qualifying small businesses.  Under the SBA loan guarantee programs, the actual loan is issued by a commercial lender, but the lender receives the full faith and credit backing of the United States Government on all or part of the loan.  Therefore, if a borrower defaults on an SBA-guaranteed loan, the commercial lender may seek reimbursement from the SBA, up to the percentage of the guarantee.  When a borrower seeks an SBA-guaranteed loan, the borrower must meet both the commercial lender's eligibility requirements for the loan as well as the SBA's eligibility requirements.

b.     The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law enacted on March 29, 2020, designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic.  Among other things, the CARES Act authorized billions of dollars in forgivable loans to small businesses for job retention and certain other business expenses through the PPP.

c.     The PPP allowed qualifying small businesses and other organizations to receive unsecured SBA-guaranteed loans. PPP loan proceeds were required to be used by businesses on payroll costs, mortgage interest, rent, and/or utilities, among other specified expenses.  The PPP allowed the interest and principal to be forgiven if businesses spent the proceeds on those expenses under certain conditions.  Pursuant to the CARES Act, the amount of PPP funds a business was eligible to receive was determined by the number of employees employed by the business and their average payroll costs.  Businesses applying for a PPP loan had to provide documentation to confirm that they had in the past paid employees the compensation represented in the loan application.

d.     The PPP is overseen by the SBA, which has authority over all PPP loans, but individual PPP loans were issued by approved commercial lenders, who would receive and process PPP applications and supporting documentation.  Eligibility for PPP loans was limited to businesses in existence before on or about February 15, 2020.

e.     Borrowers through the PPP were also eligible to apply for loan forgiveness once all loan proceeds for which forgiveness was requested had been used. Borrowers were required to submit a form provided by the SBA ("PPP Loan Forgiveness Application") and financial statements as evidentiary support to demonstrate that they had complied with the required conditions of the PPP loan. These conditions required utilizing the funds to pay permissible business expenses authorized by the SBA.

**The Fraudulent PPP Loan Application**

8.     Based on my review of records received from the SBA and the New York State Department of State, Division of Corporations and State Records (the "NY DOS"), I have learned the following, among other things:

3

a.      On or about March 17, 2017, NGINA COPELAND, the defendant, registered AHC, a corporation headquartered in the Bronx, New York, with the NY DOS.

b.      On or about June 29, 2020, COPELAND submitted an application for a PPP loan to the SBA, seeking a loan for AHC (the "PPP Loan Application").

c.      In connection with the PPP Loan Application, COPELAND certified, among other things, "that the information provided in this application and . . . in all supporting documents and forms is true and accurate in all material respects" and that she "understand[s] that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law."

d.      The PPP Loan Application claimed that COPELAND was the sole owner of AHC, which was incorporated on or about March 2017 and maintained a Bronx address.

e.      As an attachment to the PPP Loan Application, COPELAND provided a list of AHC's purported employees (the "Employee List"). The Employee List stated that AHC had approximately 31 employees and that each employee had the same hourly wage, year-to-date earnings, hours, and percentage of deduction. In addition, the PPP Loan Application further stated that AHC had an average monthly payroll of approximately $237,033.33 and that the purpose of the loan was for "utilities."

f.      On or about July 10, 2020, COPELAND signed a promissory note (the "Promissory Note") providing that she would pay back the principal balance and any interest on the loan to the lender, Financial Institution-1. The Promissory Note listed the recipient of the loan as "ANDAIYE S HAIR CLOSET CORP" and directed that the loan be sent to a certain account in AHC's name (the "AHC Bank Account") at a certain bank ("Bank-1").

9.      Based on my review of records provided by the SBA, I know the following, in substance and in part:

a.      On or about June 7, 2021, NGINA COPELAND, the defendant, submitted a PPP Loan Forgiveness Application Form (the "PPP Loan Forgiveness Application"), which is an application to have the borrower's PPP loan forgiven if the borrower meets certain requirements such as using the loan proceeds for eligible expenses.

b.      The PPP Loan Forgiveness Application stated, in sum and substance, that, at the time of the loan application, AHC had 31 employees, and that, at the time of the PPP Loan Forgiveness Application, AHC had 33 employees. The PPP Loan Forgiveness Application further stated, in sum and substance, that, at that time, AHC's payroll costs were approximately $592,500.

c.      On the PPP Loan Forgiveness Application, COPELAND certified, among other things, that the loan would be "used to pay business costs that are eligible for forgiveness" and that "[t]he information provided in this application and the information provided in all supporting documents and forms is true and correct in all material respects."

d.      On or about January 19, 2021, as an attachment to the PPP Loan Forgiveness Application, COPELAND submitted two bank statements that purported to be supplied by Bank-1 and to summarize account activity for the AHC Bank Account. One bank

4

statement was from in or about July 2020, and the other was from in or about August 2020 (respectively, the "Fraudulent July Statement" and the "Fraudulent August Statement").

e.  As described further below, based on my review of certified copies of statements provided by Bank-1 for the AHC Bank Account from in or about July 2020 and in or about August 2020, I have determined that the bank statements submitted by COPELAND in connection with her PPP Loan Forgiveness Application contain fraudulent misrepresentations. Based on my training, experience, and participation in this investigation, I believe that COPELAND provided these fraudulent statements to deceive the SBA into believing that she used the loan proceeds for business related expenses, as she had indicated on the PPP Loan Application that COPELAND had submitted on or about June 29, 2020.

f.  The Fraudulent July Statement purportedly detailed the AHC Bank Account activity from on or about July 1, 2020, through July 31, 2020.  The Fraudulent July Statement reflected a "Beginning Balance" of approximately $237,711.00, deposits in the amount of approximately $625,000, "Electronic Deposits" in the amount of approximately $850,877.69, and an "Ending Balance" of approximately $1,411,274.92.  The "Daily Account Activity," which is the record of all transactions that take place within an account each statement period, including deposits, withdrawals, transfers, and other banking activities, included, among other transactions: (1) an electronic deposit from an alleged hair company ("Hair Company-1") for approximately $205,877.00 posted on or about July 30, 2020, (2) an electronic payment to a payroll service ("Payroll Service-1") Payroll Service-1 for approximately $61,851.08 posted on or about July 29, 2020, (3) debit withdrawals for approximately $57,988.33 each posted on or about July 28, 2020, and July 29, 2020, and (4) two debit withdrawals for approximately $1,270.00 each posted on or about July 29, 2020.

g.  The Fraudulent August Statement purportedly detailed the AHC Bank Account activity from on or about August 1, 2020, through August 31, 2020.  The Fraudulent August Statement reflected a "Beginning Balance" of approximately $1,411,274.92, "Electronic Deposits" in the amount of $222,871.00, "Checks Paid" in the amount of approximately $177,774.99, and an "Ending Balance" of approximately $1,139,904.67.  The Daily Account Activity included, among other transactions: (1) an electronic deposit from Hair Company-1 for approximately $104,800.00 posted on or about August 13, 2020; (2) an electronic deposit from a second hair company ("Hair Company-2") for approximately $118,071.00 posted on or about August 14, 2020; (3) paid checks for approximately $57,988.33 each posted on or about August 10, 2020, August 17, 2020, and August 24, 2020; (4) paid checks for approximately $1,270.00 each posted on or about August 11, 2020, August 19, 2020 and August 20, 2020; (5) several electronic payments to Payroll Service-1 for approximately $61,851.08 each posted on or about August 5, 2020, August 12, 2020, August 19, 2020, and August 26, 2020; and (6) withdrawals for approximately $57,988.33 and approximately $7,500 posted on or about August 5, 2020, and August 28, 2020, respectively.

10.  Based on my review of records provided by Bank-1, I also know the following, in substance and in part:

a.  Bank-1 provided certified copies of the July 2020 and August 2020 statements for the AHC Bank Account (the "Certified July Statement" and the "Certified August Statement," respectively).  As set forth below, the Certified July and August Statements from

Bank-1 are materially different than those NGINA COPELAND, the defendant, submitted to the SBA as part of COPELAND's PPP Loan Application. In particular, and as summarized below, COPELAND altered the bank records to include payments for payroll and other business-related expenses that are not reflected in the certified bank records.

b.      The Certified July Statement detailed the AHC Bank Account activity from on or about July 1, 2020, through July 31, 2020. The Certified July Statement reflected a "Beginning Balance" of approximately $25.00, deposits in the amount of $15,920.00, "Electronic Deposits" in the amount of approximately $655,000.69, and an "Ending Balance" of approximately $429,319.39. The "Daily Account Activity" included, among other transactions: (1) a deposit for approximately $15,920.00 posted on or about July 21, 2020; (2) checks for approximately $59,283.33 and approximately $7,359.00 posted on or about July 23, 2020, and July 27, 2020, respectively; and (3) withdrawals for approximately $57,988.33 each posted on or about July 28, 2020, and July 29, 2020. In contrast to the Fraudulent July Statement, the Certified July Statement did not contain any deposits from Hair Company-1 or any electronic payments to Payroll Service-1. Instead, the Certified July Statement includes apparently routine debit card payments for, among other things, purchases for pharmacy and post office expenses. Based on my training and experience, I believe that the Fraudulent July Statement was altered to make it seem like NGINA COPELAND, the defendant, was using the PPP loan for business-related expenses, which would have been a necessary condition for her PPP loan to be forgiven. Based on my review of the Certified July Statement, however, COPELAND does not appear to have been using the PPP loan proceeds for business-related expenses.

c.      The Certified August Statement detailed the AHC Bank Account activity from on or about August 1, 2020, through August 31, 2020. The Certified August Statement reflected a "Beginning Balance" of approximately $429,319.39, "Checks Paid" in the amount of approximately $177, 774.99, "Electronic Deposits" in the amount of approximately $8.70, and an "Ending Balance" of approximately $179,998.31. The "Daily Account Activity" included, among other transactions: (1) paid checks for approximately $57,988.33 posted on or about August 10, 2020, August 17, 2020, and August 24, 2020, (2) paid checks for approximately $1,270.00 each posted on or about August 11, 2020, August 19, 2020, and August 20, 2020, and (3) withdrawals for approximately $57,988.33 and for approximately $7,500.00 posted on or about August 5, 2020 and August 28, 2020, respectively. Unlike the Fraudulent August Statement, the Certified August Statement did not contain any electronic payments to Payroll Service-1. Instead, the Certified August Statement includes apparently routine debit card payments for, among other things, retail store expenses. Based on my training and experience, I believe that the Fraudulent August Statement was altered to make it seem like COPELAND was using the PPP loan for business-related expenses, which would have been a necessary condition for her PPP loan to be forgiven.

11.      Based on my participation in this investigation, including my conversations with several of the individuals listed on the Employee List and my review of tax records provided by the New York State Department of Taxation and Finance ("NYSDTF"), I know the following, in substance and in part:

a.      Law enforcement identified eight individuals listed on the Employee List, all of whom stated that they did not know NGINA COPELAND, the defendant, and had never worked for or with her.

b.      At least one individual listed on the Employee List was an inmate in the New York State Department of Corrections during the period when, according to the Employee List, that individual purportedly was employed by COPELAND.

c.      The NYSDTF does not have any records under the name AHC or its registered employee identification number for fiscal years 2019 and 2020.

### COPELAND Shared the Proceeds with CC-1

12.      Based on my review of financial records provided by Bank-1; a certain bank headquartered in Manhattan, New York ("Bank-2"); and records received from the NY DOS, I know the following, in substance and in part:

a.      On or about June 29, 2020, the same date that NGINA COPELAND, the defendant, submitted the PPP Loan Application, COPELAND also opened the AHC Bank Account at a bank branch located in the Bronx, New York.

b.      On or about July 16, 2020, the AHC Bank Account received an electronic deposit from Financial Institution-1 in the amount of approximately $52,500, which was a portion of the PPP loan for which COPELAND had applied.  In addition, on or about July 21, 2020, the AHC Bank Account received an electronic deposit from Financial Institution-1 in the amount of approximately $592,500, which was an additional portion of the PPP loan.

c.      Between in or about July 22, 2020, through in or about September 15, 2020, the AHC Bank Account made payments to CC-1, various other entities, and another co-conspirator ("CC-2") totaling approximately $538,470.64.  The recipients of these payments included three companies controlled by CC-1 ("Company-1," "Company-2" and "Company-3," collectively the "CC Companies").  On or about July 22, 2020, COPELAND signed a check in the amount of approximately $59,283.33 made payable to Company-1.  On or about July 28, 2020, and August 9, 2020, COPELAND signed two checks each in the amount of approximately $57,988.33 made payable to Company-1.  On or about July 29, 2020, August 17, 2020, and September 7, 2020, COPELAND signed three checks each in the amount of approximately $57,988.33 made payable to Company-2.  On or about September 15, 2020, COPELAND signed a check in the amount of approximately $57,000 made payable to Company 2.  On or about August 24, 2020, COPELAND signed a check in the amount of approximately 57,988.33 made payable to Company-3.

### COPELAND Caused Interstate Wires to Be Transferred

13.      Based on my review of publicly available records, my review of records provided by Bank-1 and Bank-2, and my communications with an employee of Bank-2, I have learned the following, in substance and in part:

a.      Financial Institution-1 is headquartered in Manhattan, New York.

b.      During the relevant period in approximately 2020 through 2021, Bank-1 was headquartered in Cherry Hill, New Jersey.[1]

---

[1] As of September 2025, Bank-1 has been headquartered in Mount Laurel, New Jersey.

c.      During the relevant period, NGINA COPELAND, the defendant, made payments between Bank-1 and Bank-2 that involved the transmission of wire communications between Bank-1 using servers located in Illinois, New Jersey, and/or Virginia, to Bank-2 using servers located in states other than Illinois, New Jersey, or Virginia.

## The SBA Forgives the PPP Loan

14.      Based on my review of records provided by the SBA, I know the following:

a.      On or about June 7, 2021, NGINA COPELAND, the defendant, submitted PPP Loan Forgiveness Application Form 3508EZ (the "PPP Loan Forgiveness Application").

b.      On or about June 7, 2021, in support of the PPP Loan Forgiveness Application, COPELAND submitted to the SBA two bank statements, purportedly supplied by Bank-1, that purported to be for the AHC Bank Account. One bank statement was from July 2020, and the other was from August 2020 (respectively, the "Fraudulent July Statement" and the "Fraudulent August Statement"). COPELAND provided these fraudulent statements to deceive the SBA into believing that she used the loan proceeds for payroll, as she had indicated on the PPP Loan Application.

c.      On or about June 23, 2021, on the basis of the PPP Loan Forgiveness Application COPELAND had submitted, the SBA forgave COPELAND's PPP loan.

WHEREFORE, I respectfully request that a warrant be issued for the arrest of NGINA COPELAND, the defendant, and that she be arrested, and imprisoned or bailed, as the case may be.


**/s Lawrence Bond**  (By Court with Authorization)
_____
Lawrence Bond
Investigator
New York City Department of Investigation


Sworn to me through the transmission of
this Complaint by reliable electronic means (telephone),
pursuant to Federal Rule of Criminal Procedure 4.1,
this 17th day of June, 2026.

_____
THE HONORABLE SARAH L. CAVE
United States Magistrate Judge
Southern District of New York